## FRED HEYSE
*vs.*
## LOCAL 1938, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, ET AL.

Superior Court      Fairfield County      File No. 56065

**MEMORANDUM FILED JULY 14, 1939**

*Arthur B. O'Keefe,* of New Haven, for the Plaintiff.

*Shannon & Wilder,* of Bridgeport, for the Defendants.

SIMPSON, J. The relevant facts in this case may be summed up somewhat briefly. On May 10, 1938, the plaintiff was a member of the defendant union, and Anthony DeZenzo, its business agent. On said day the plaintiff was guilty of such conduct toward DeZenzo in connection with what men were to be employed in discharging the cargo of the U. S. S. Achilles, that DeZenzo was of the opinion that plaintiff's conduct was detrimental to the best interests of the union, and that the plaintiff should be disciplined for his conduct. Thereafter on May 12th or 13th DeZenzo went to the secretary of the union and stated his complaint. The secretary thereupon wrote the plaintiff a letter (Exhibit E) and signed DeZenzo's name. DeZenzo did not see the letter and did not know his name was signed to it. The letter stated certain charges against plaintiff and purported to fine him $25. The·letter was delivered to the plaintiff sometime in the forenoon of May 14th. The plaintiff thereupon sought the president who thereupon called a meeting of the executive board for 3 o'clock that afternoon. The meeting was attended by all the members of the executive board, DeZenzo, the secretary and the plaintiff. The board reprimanded the secretary for assuming to fine the plaintiff as being without his authority, but considered the letter as charges against the plaintiff. The matter was considered by the board for about two and one-half hours, both DeZenzo and the plaintiff being heard. After such hearing and consideration the board voted to fine the plaintiff $25. In connection therewith the plaintiff was instructed not to go on the Achilles that night. Notwithstanding such in-

structions he went aboard the Achilles that night and there was more trouble. As a result the board held another meeting on the evening of May 18, 1938. At this meeting all the members of the board were present and also DeZenzo, the secretary and plaintiff. After hearing DeZenzo, the business agent and the plaintiff as to what occurred on the Achilles on the night of May 14th, the board voted to withdraw the fine of $25 imposed on May 14th and fined him $50 and suspended him indefinitely from the union. At a meeting of the members of the union on May 31st, upon the board making a report of what had been done with reference to the plaintiff and after considerable discussion, the meeting voted to sustain the executive board's ruling. No notice was given to the members that the matter was going to be considered, but the plaintiff was present and was called upon to explain what happened on May 10th and May 14th.

Inasmuch as the letter, Exhibit E, may be considered as an informality and as the board at its meeting on May 18th in effect rescinded its action on May 14th in fining the plaintiff $25, the real question at issue is whether the board had power and authority to fine the plaintiff $50 and suspend him indefinitely from the union. If it was without such authority the action of the members had no effect except to confirm an illegal act and make the union liable therefor. *Lahiff vs. St. Joseph's Total Abstinence Soc.,* 7 Conn. 648.

While the action of the plaintiff may have justified the board in disciplining the plaintiff and possibly imposing a fine, there is no authority in the constitution and by-laws of the local or in the constitution and rules of order of the international body, of which the local was a constitutional part, authorizing an executive board to suspend a member, much less indefinitely suspend him, which is tantamount to an expulsion. In the absence of authority to the board to suspend or expel, the presumption is that the power to deal summarily with a member is in the union itself. The action of the union of May 31st did not have that effect, because that question was not specifically before it, and what it did was merely to "sustain" the board's ruling. The defendant relies upon article 2 of the by-laws of the union as authority for the board's action. This article is headed "Management" and provides as follows: "The government and management of the Local between meetings shall be in our Business Agent and the Executive Board of seven members, and their finding and ruling shall be final in this

period." This provision is merely a designation of who will manage the affairs of the union between meetings and contains no delegation of specific authority. Presumably the parties mentioned shall have management of the general affairs of the union between meetings. This is borne out by section 7 of article 4, which defines the power of the executive board. This section provides, among other things: "They (the board) shall have power to transact all necessary business of this Local between meetings." No express power is given to suspend members, and certainly no such power can be implied from the language used.

Section 10 of the by-laws, which provides that, "any member against whom charges are preferred by an officer or members of this Local for violations of the constitution and by-laws of this organization shall be punished according to the discretion of the Executive Board," is of doubtful interpretation. Presumably the power to punish related to those matters within the jurisdiction of the board. If it was intended to delegate powers upon the board to indefinitely suspend, it should have been more definitely expressed and not left to implication. Even if such power may be implied and even if such power had been expressly stated, it appears to be against the general rule that such power can be delegated and even if delegated it cannot be left to the discretion of a subordinate board.

The conclusion is therefore reached that the executive board was without power or authority to indefinitely suspend plaintiff and that its attempt to do so was illegal and void. This being so, he was not obliged to seek redress by appeal within the order. *Gardner vs. East Rock Lodge*, 96 Conn. 198.

Damages in this case are more or less speculative. It is impossible to find how much wages he may have lost because of his suspension from the union. It appears he was working elsewhere both before and after the suspension. It also appears that on July 19, 1938, he secured an injunction against these defendants interfering with his working as a longshoreman. He is nevertheless entitled to damages for being excluded from the union, humiliation and mental suffering. He also was not without fault.

Judgment is rendered against the defendant for plaintiff to recover $300 and costs.